UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
RODNEY DAVIS,

               Plaintiffs,

-against-

THE CITY OF NEW YORK, NYPD POLICE
OFFICER ANTONIO COSTA, TAX REG #971881,
and NYPD POLICE OFFICERS JOHN DOES NOS. 1,
2, 3, ETC., (whose identity are unknown but who are
known to be personnel of the New York City Police
Department), all of whom are sued individually and in
their official capacities,

               Defendants.

------------------------------------------------------------------

25CV7006

**COMPLAINT**

**Jury Trial Demanded**

       Plaintiff, RODNEY DAVIS, by his counsel, AARON M. RUBIN, hereby

alleges as follows, upon knowledge as to himself and his acts, and as to all other matters

upon information and belief:

       1.     Plaintiff brings this action to recover compensatory and punitive

damages, attorney's fees and costs, pursuant to 42 U.S.C. § 1983 for violations of his

civil rights under the United States Constitution and New York State law and constitution

caused by the conduct of Defendants police officers and the City of New York.

**PARTIES AND RELATED ENTITIES**

       2.     Defendant CITY OF NEW YORK ("CITY") is and was at all

times relevant herein a municipal entity created and authorized under the laws of the

State of New York. The CITY OF NEW YORK is authorized by law to maintain the

New York City Police Department, ("NYPD"), which acts as the City's agent in the area

of law enforcement and for which it is ultimately responsible. The CITY OF NEW

YORK assumes the risks incidental to the maintenance of the NYPD, and the employment of its police officers.  Additionally, the CITY OF NEW YORK was at all times relevant herein the public employer of Defendant police officers.

3.     Defendant police officers were employed by the NYPD and acted under color of state law in the course and scope of their duties and functions as agents, employees and officers of the CITY OF NEW YORK.  The identity and number of police officers, except for Police Officer Antonio Costa, are still unknown.  Those who are unknown at this time are being sued as "John Does" until their names can be determined. All of the police officers sued herein are alleged to have acted in both their official and individual capacities.

4.     Defendant Police Officer Antonio Costa was at all relevant times a City police officer assigned to the NYPD, in particular the 83rd Precinct in Brooklyn, and is being sued in his individual and official capacity.

5.     Plaintiff Rodney Davis is a 58 year-old male who is a resident of Brooklyn presently and during the incident complained of herein.

### Jurisdiction and Venue

6.     Jurisdiction in this Court is established pursuant to 28 U.S.C. §§ 1331 and 1343.

7.     Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide his claims brought under New York State law.

8.     A notice of claim of Plaintiff's intent to sue for the violation of his civil rights, including false arrest, false imprisonment, malicious prosecution, and abuse

2

of process, and common law torts, was duly filed with the City of New York on December 5, 2024.  A second notice of claim of intent to sue for the same violations was also filed January 3, 2025, which is the date of dismissal of the underlying criminal charges that were falsely issued against Plaintiff and the subject of the herein Complaint.

9.    Pursuant to New York General Municipal Law § 50-H, the City of New York conducted an examination of Plaintiffs by deposition held on February 4, 2025.

10.    To date, the City of New York has not made an offer to settle Plaintiff's claims.

11.    Venue is properly laid in the Eastern District of New York under 28 U.S.C. §§ 1391(b) and (c) because the incident giving rise to the claims took place in Kings County.

12.    Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

**Statement of Facts**

13.    On or about September 22, 2024, at around 1:00 a.m., Mr. Davis was driving a vehicle on a public street in Brooklyn, New York.

14.    Mr. Davis was lawfully operating his vehicle with a valid Virginia driver's license and the vehicle was properly registered in his name in the State of Virginia.

15.    Mr. Davis had two passengers in his vehicle, whom he had just picked up at the intersection of Jefferson and Ralph Avenues. Mr. Davis was traveling to

a club venue in the Bushwick/Williamsburg area to be part of a show performance that was about to start.

16.    At approximately 1:25 a.m., as Mr. Davis was driving on Evergreen Avenue approaching its intersection with Hart Street, he encountered NYPD officers standing in the middle of the street on foot.

17.    The officers stopped Mr. Davis's vehicle and told him that there had been a fatality the day prior and that they were conducting "safety checks."

18.    There were no signs present, or other visible manifestation of the presence of a checkpoint, to alert motorists to the presence of a uniform system for stopping vehicles.  There were no other vehicles present that were similarly stopped by the police officers.

19.    The police officers were not acting under any plan embodying explicit and neutral limitations on their conduct for stopping vehicles in the street.

20.    The officers directed Mr. Davis to pull over to a second set of officers standing across the Hart Street intersection. Mr. Davis asked why this was necessary and expressed his concerns about the nature of his travel and his appointment to get to the club, but the officers merely repeated that they were doing safety checks.

21.    Mr. Davis complied with the officers' direction and pulled over to the second set of officers as instructed.

22.    The second set of officers engaged in conversation with Mr. Davis's passengers and then asked Mr. Davis for his license.

23.    Mr. Davis asked the officers why he was being asked to provide his license and whether he had committed a crime.

4

24. Mr. Davis was not speeding, was not driving recklessly, had committed no traffic violation, and had not engaged in any unlawful conduct whatsoever. Nor were any of his two passengers engaged in any unlawful conduct.

25. There was no reasonable suspicion or probable cause to stop Mr. Davis's vehicle or to detain him or his two passengers.

26. In response to Mr. Davis's inquiry, one of the officers, later identified as Defendant Police Officer Antonino Costa, stated in sum and substance, "you refuse to give your ID. All right, take him out of the car and lock him up."

27. At that point, officers opened Mr. Davis's car door. Because the vehicle's door handle does not extend outward, an officer put his hand inside Mr. Davis's car and opened the door from the inside.

28. Mr. Davis was wearing his seatbelt and began to unlatch it to exit the vehicle.

29. As Mr. Davis was stepping out of the vehicle, officers forcefully grabbed him and violently pulled him out of the car.

30. Officers threw Mr. Davis up against his car and placed him in handcuffs.

31. The handcuffs were applied with excessive tightness, causing pain and injury to Mr. Davis's wrists.

32. Officers conducted a pat-down search of Mr. Davis and removed items from his pockets, including his wallet, money, and keys.

33. No contraband, weapons, or illegal items of any kind were found on Mr. Davis's person.

34.    Officers threw Mr. Davis into the back of a police vehicle.

35.    There was no probable cause or any other legal basis or justification for the arrest of Mr. Davis and he was not committing nor had committed any offense.

36.    Mr. Davis's vehicle was seized and taken to the 83rd Precinct, the same precinct to which Mr. Davis was transported.

37.    None of Mr. Davis's passengers were arrested.

38.    At the precinct, Mr. Davis was subjected to another search, during which officers cut the drawstrings from his sweatsuit, destroying his outfit.

39.    Mr. Davis asked why he was being arrested and was told by officers that it was because he did not provide his identification.

40.    Police offices, including Defendant Police Officer Antonino Costa, processed Mr. Davis for arrest and charged him with Obstruction of Governmental Administration in the Second Degree, under Penal Law § 195.05(2), a class A misdemeanor, and Failure to Obey a Police Officer, under VTL § 1102, an infraction.

41.    Mr. Davis began to feel dizzy and lightheaded while at the precinct and requested medical assistance. His blood pressure was found to be elevated, a condition that occurs when he is under stress.

42.    Emergency Medical Services responded to the precinct and transported Mr. Davis to Woodhull Hospital, where he remained in custody and under police guard.

43. Mr. Davis was at the hospital for approximately three to four hours while his blood pressure was monitored. He was not given any medication but was eventually cleared and transported back to the 83rd Precinct while still in custody.

44. Later that evening on September 22, 2024, Mr. Davis was transported from the precinct to Kings County Central Booking.

45. Mr. Davis later appeared before a judge for arraignment, either that evening or in the early morning of September 23, 2024.

46. At the arraignment, a criminal court complaint was filed against Mr. Davis, sworn to by Defendant Police Officer Antonino Costa.

47. The complaint charged Mr. Davis with: (1) Obstructing Governmental Administration in the Second Degree, a class A misdemeanor under Penal Law § 195.05(1); (2) VTL § 1102, Failure to Obey a Police Officer; and (3) VTL § 509(1), Unlicensed Operator.

48. The complaint signed by Defendant Police Officer Antonino Costa falsely alleged that Mr. Davis "initially refused" to pull over when ordered to do so multiple times and that Mr. Davis "repeatedly refused to provide" his license and registration when ordered to do so.

49. In fact, Mr. Davis did pull over as directed, did inquire as to the basis for the stop, and did not refuse to provide his license but rather questioned why he was being required to provide it when he had committed no violation.

50. The charges against Mr. Davis were baseless and without probable cause.

51.  Mr. Davis was released on his own recognizance following the arraignment.

52.  Mr. Davis was initially assigned a court-appointed attorney to represent him in the criminal proceedings, and subsequently retained an attorney.

53.  Mr. Davis appeared in court on two additional occasions following his arraignment.

54.  On January 3, 2025, all charges against Mr. Davis were dismissed.

55.  The conduct by Defendants caused Mr. Davis to suffer loss of liberty, physical injury, emotional and psychological pain, embarrassment, humiliation, reputational harm, and the deprivation of his federal and state Constitutional rights.

### PLAINTIFF'S FEDERAL CLAIMS
### AGAINST DEFENDANT POLICE OFFICERS

*First Cause of Action: False Arrest and Unlawful Seizure in Violation of the Fourth and Fourteenth Amendments (42 U.S.C. § 1983)*

56.  Plaintiff re-alleges and incorporates by reference the allegations set forth above.

57.  In committing the acts and omissions complained of herein, Defendant police officers acted under color of state law to deprive Plaintiff of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

58.  Defendants unlawfully seized and arrested Plaintiff without probable cause or reasonable suspicion in violation of the Fourth Amendment.

59.  At no time did Plaintiff commit any crime or traffic violation that would justify his arrest or seizure.

8

60. The stop of Plaintiff's vehicle and subsequent arrest were pretextual and without constitutional justification.

61. The conduct by Defendants was a direct and proximate cause of Plaintiff's false arrest and unlawful seizure, all in violation of 42 U.S.C. § 1983.

*Second Cause of Action: Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments (42 U.S.C. § 1983)*

62. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

63. Defendant Police Officer Antonino Costa and other Defendant John Doe police officers initiated a criminal proceeding against Plaintiff by signing a criminal complaint containing false allegations and charging Plaintiff with crimes he did not commit.

64. The criminal proceeding was commenced without probable cause.

65. Defendant Police Officer Antonino Costa and other Defendant John Doe police officers acted with malice in initiating the prosecution.

66. The criminal proceeding terminated in Plaintiff's favor when all charges were dismissed on January 3, 2025.

67. As a result of the malicious prosecution, Plaintiff suffered deprivation of liberty, emotional distress, damage to his reputation, and incurred expenses in defending against the false charges.

9

68.     The malicious prosecution by Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

## PLAINTIFFS' STATE LAW CLAIMS AGAINST DEFENDANT POLICE OFFICERS

69.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

70.     The conduct by Defendant police officers amounted to false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress in violation of New York state law.

71.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages.

## PLAINTIFF'S STATE LAW CLAIMS AGAINST THE CITY OF NEW YORK

72.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

73.     Because Defendant police officers were acting within the scope of their employment as members of the NYPD during the incident in question, the City of New York is vicariously liable for the violations of civil rights set forth herein, including but not limited to false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands the following relief jointly and severally against all

defendants:

(1)    Compensatory damages in an amount to be determined by a jury at trial;

(2)    Punitive damages in an amount to be determined by a jury at trial;

(3)    The convening and empanelling of a jury to consider the merits of the

claims herein;

(4)    Costs, interest and attorney's fees;

(5)    Such other and further relief as this court may deem just and proper.

Dated:    New York, New York
December 21, 2025

AARON M. RUBIN
Attorney for Plaintiff

_____ /s *Aaron M. Rubin*
BY: Aaron M. Rubin, Esq.

99 Wall Street Suite 1130
New York, New York 10016

(212) 725-4600

arubin@amresquire.com